United States District Court
Eastern District of Washington

Reed, Matthew
      Plaintiff
    vs.

Dyson, Byrnes, Barker,
Window, Henderson, Duenich,
Miller-Stout, et. al.

Civil Rights Complaint
by a Prisoner under
42 U.S.C. §1983

Jury Trial Demand

Complaint

## Summary

1. On February 18, 2011 Washington state Dept. of Corrections personal, brought disciplinary actions against plaintiff for the sending of email, via the Jpay messaging service to a recipient outside the institution.

2. Outbound communication, regardless of medium, is protected by the First Amendment of the United States Constitution, a protection the defendants violated in this instant case.

3. Dept. of Corrections employees named herein rely on RCW 72.02.260, WAC section 137-48, DOC Policy 450.100, 460.000, AHCC Policy 460.000, 450.100, to justify there actions. These policies and laws constitute official sanction of action.

16

4. Washington State Department of Corrections personel have used the censorship of out bound communication to hold plaintiff in segregation and contrary to rights guaranteed by state law, specifically WAC 137-28 and 137-32. Other violations of state law may exist.

5. Washington State Department of Corrections personel used censorship of out bound email to detain plaintiff at an improper custody level without other justification for over a year.

6. Washington State Department of Corrections personel's use of punitive actions are sufficient to quelch free speech and freedom of communication.

7. Washington Department of Corrections policy and Washington state law create substantive and procedural due process protections subject to the Fourteenth Amendment of the United States.

8. Coyote Ridge Corrections Center and Airway Heights Corrections Center, divisions of the Washington State Department of Corrections, personel participated in the deprivations and violations committed herein.

9. No record exists to show analysis of the actual threat doctrine required by law was completed.

10. Dept of Corrections personel brought forth and

2

completed disciplinary actions to silence critical and hostile thought of a political nature against Washington State elected and appointed officials, and the Dept. of Corrections as a whole.

11. The actions of Washington State Dept. of Corrections officials prohibited plaintiff from transitioning custody to a place where he could earn substantially more money while incarcerated.

12. The actions of Washington State Dept. of Corrections officials aggrivated the break down of communication between plaintiff and his wife.

13. The actions of Dept. of Corrections personel created a break down in the ability to have a relationship with his minor children.

14. The actions of Dept. of Corrections personel prohibited plaintiff from speaking freely with friends and family.

15. Defendant employees of the Washington Dept. of Corrections are involved with the private JPay corporation in the deprivations contained herein.

18

3

# Jurisdiction

J1. Plaintiff brings forth this action under Title 42 §1983 for actions committed by persons employed by the state.

J2. All ~~plainti~~ defendants named herein are employees of the State of Washington Dept. of Corrections, or Contractors there to and acting in an official capacity and/or individual capacity while cloaked in law.

J3. First Amendment violations are subject to scrutiny under the United States Constitution.

J4. The United States Constitution prohibits actions designed to restrict free speech under the First Amendment, and inflicting retaliatory and vindictive actions under the Eighth amendment.

J5. Washington State Law creates proceedural and substantive due process rights that are subject to the protections of the Fourteenth Amendment and Fourth Amendment.

J6. Censorship of speech and outbound communication is subject to a well established and rigid standard set by Federal Courts, including the United States Supreme Court, and applied to the conduct and application of state prisons and correctional institutions.

J7. The email system provided by the Dept. of Corrections

4

through JPay, an out of state corporation, utilizes the interstate phone network, and is part of electronic commerce between states.

J8. None of the issues brought forth have or are anticipated to affect the duration of plaintiffs term of confinement or date of release. Issues focus on conditions of confinement and conduct of individuals employed by the state directly or by contract.

J9. Defendants have engaged in conduct with a vindictive and retaliatory animus for the purpose of silencing free speech in violation of the Eighth Amendment

J10. Defendants ~~and~~ have imposed disciplinary actions inconsistent with Washington and Federal law in violation of the Eighth Amendments protection against cruel and unusual punishment.

20

5

# Complaint

1. On February 18, 2011, unknown mail room staff referred email to an unknown administrator at Coyote Ridge Correctional Center, a Washington Dept. of Correcions facility. Mailroom staff blocked the email sent by the JPay system in an act of censorship contrary to the First Amendment. Mailroom staff may have acted in full or part on the orders of the adminstrar, believed to be CPM McDonough.

2. Unknown administrator, believed to be McDonough, then directed CRCC staff to immediately hold an FRMT to demote plaintiff's custody without due process standards of notice or any substantive findings. This occurred on February 18, 2011.

3. Under orders, CRCC staff, CC Reuban Stokes, CC Parry, and CO Knode convened an FRMT to demote plaintiff from MI-2 to MI-3 custody. Participants demanded plaintiff surrender his right to 48 hours notice as guaranteed by DOC policy 300.380 and without proper staff as defined by DOC policy 300.380. DOC policy 300.380 is based on portions of WAC 137 related to custody and classification.

4. Plaintiff refused to participate in the spontaneous FRMT ordered on February 18, 2011 without proper notice and due process.

5. CRCC staff, presumably at the direction of CPM McDonough, retaliated against plaintiff by transporting him to the segregation unit at 1703 on February 18, 2011. Segregation orders were signed by Lt. Douglas without investigation into risks to institutional safety and security. This violates the procedures outlined in WAC 137. Transport to segregation was conducted by COs Culverhouse and Scott. All parties herein named had an opportunity to protect plaintiffs rights of process and free speech.

6. The message complained of by CPM McDonough or alternate administrator, Lt. Douglas, and CC Stokes, CC Parry, CO Knode, and other unknown staff of CRCC, was a personal message sent to plaintiff's wife, not to DOC personel. The message sent by plaintiff contained personal political and religious beliefs regarding the government and operations of the Dept. of Corrections. No record exists that plaintiff's wife requested DoC to monitor, restrict, limit, or otherwise censor communication sent by plaintiff.

7. The segregation of plaintiff for sending email constitutes the initiation of disciplinary proceeding under WAC 137-28 and conditions of confinement governed under 137-32. At such same proceedural and substantive due process protections attached to plaintiff and those protections are covered under the Fourteenthe Amendment of the U.S. Constitution.

8. Mailroom staff, to be identified, CPM McDonough, Lt Douglas, CC Parry, CC Stokes, CO Knode, interferred

22

7

with plaintiff's first amendment rights of speech and interfered with recipients first amendment rights to receive email from plaintiff.

9. Washington Dept. of Corrections policy #50.100 specifically protects religious, political, ethnic, and other views and voices. This explicitly includes ideas and commentary of DoC itself.

10. DoC policy 300.380 requires that an FRMT include the inmate, the inmate's counselor, the custody unit supervisor, and a custody/security representative, at a minimum. CC2 Stokes and CC2 Parry fail to meet any of these definitions under the FRMT forced on February 18, 2011.

11. DoC policy and WAC 137-28, disciplinary procedures, specifically govern actions related to conduct occurring inside the institution and does not apply to mail or email sent out of the institution.

12. Per DOC form 05-797, plaintiff was segregated for miss use of the "jpay and threats being made." No allegation is made as to the recipient of threats or the actual threat being made. No documentation is supplied or exists regarding how the "Threat to other, self, security" is being met as required by WAC 137.

13. On February 18, 2011, I filed grievance 1140872, which was denied on March 14, 2011 by M. McCarture (unknown spelling), signing as the Grievance Coordinator. The form states the conduct of CC Parry, Stokes and

CO Knode is non-grievable. This terminates the grievance process and exhausts this line of remedy.

14. On February 23, 2011, CS3 Scilley, determined that plaintiff should be retained in segregation based on "Threat to Orderliness of Facility" but makes no effort to determine or specify the threat posed and/or how the facility orderliness is threatened. The vague findings of CS3 Scilley was affirmed on 2/24/11 by Assc. Superintendant Andrewjeski without comment or apparent review beyond autosignature. This violates the procedures outlined in WAC 137 for substantive review.

15. On March 2/2011 CS3 Scilley provided an exact duplicate of 2/23/11 with dates changed and no review proceeding or hearing. Assc. Superintendant Andrewjeski signed and affirmed the review prepared by Scilley the same day and without Scilley meeting with plaintiff first.

16. On March 9, 2011 CS3 Scilley and Associate Andrewjeski repeated the robotic performance of March 2, 2011. Again the review was done and completed without meeting with plaintiff in violation of WAC 137 and DoC policy.

17. On March 11, 2011, CUS Richard H. Robideau, issued an unsigned serious infraction report. He cites threats of a non-specific nature to the governer and generic DOC staff. No allegation of specific threat is made or that the threatened party

was the intended recipient of the messages. He specifically states that "numerous email messages sent to his wife and mother." Neither party is alledged to have been threatened.

18. DoC infraction code 506 reads "Threatening another with bodily harm or with any offense against another person, property, or family." The plain language dictates explicit delivery to the threatened party.

19. DoC infraction code 506, must involve a party being threatened at a DoC facility not in a ambiguous medium where the party threatened is outside the facility.

20. DoC form 17-069 signed by M— V. Orctin(?) on 3/11/11 indicates evidence was taken and logged in the 506 infraction prepared by CUS Robideau. No such evidence was made available or presented to plaintiff. Evidence may include the alledgedly threatening messages sent to wife and mother.

21. On 3/16/11 CS3 Scilley participated in the same predone no-hearing review of plaintiff conducted on 3/9/11, 3/2/11, and 2/23/11. Again all due process under WAC 137 was dispensed with.

22. On 3/16/11 CS4 Biviani (Biviano?) found plaintiff guilty based on "The statements made

25                                                                10

on the Jlay are threatening toward DOC staff
Governor and other political figures." No threat
is defined, no evidence is relied on, and no fact
finding appears to be conducted. This violates
the basic standards of due process for prison
disciplinary proceeds guaranteed by the Fourteenth
Amendment.

23. CS4 Biviani ordered 27 days segregation for
punishment and declared it complete on 3-16-11.
27 days segregation exceeds DOC policy for a
506 infraction, a class B, Level II infraction.

24. CS4 Biviani cited only "Major infraction" as
rational for the sanction.

25. On some date after 2/18/2011, Lori J Zeh
(name unknown) affirmed CS4 Biviani's findings
by signing for Superintendent Uttecht on DOC
form 20-051.

26. On 3/21/11 plaintiff prepared and submitted an
appeal of CS4 Biviani's findings contrary to
DOC policy. Copies delayed submission till 3/23/11.

27. On 3/22/11 plaintiff appealed the continued
segregation confinement ordered by CS3 Scilley
and Assc. Andrewjeski to Super intendant
Uttecht. Numerous violations of DOC policy and
the WAC code were cited.

11

28. On 3/24/11 plaintiff appealed the recommendation of CS3 Scilley for an intensive management program and on going segregation status to CC4 Campbell at DoC headquarters in Olympia. Plaintiff again raised issues of blatant violations of DoC policy and WAC rules by CS3 Scilley, CUS Robideau, CSY Biviani, CPM McDonough, and other CRCC staff.

29. On 3/23/11 after the major infraction hearing CS3 Scilley for the first time complied with WAC 137 to provide advance notice of adseg review hearings. This documents over a month of procedural non-compliance with due process protections.

30. On 3/25/11, an FRMT recommended that plaintiff be demoted to MI-3 from MI-2 and moved to another facility. This was done to pacify CS3 Scilley, not because the rest of the committee thought it necessary. CS3 Scilley bullied other DoC staff to exact retaliation and vindictiveness against plaintiff for his own personal grievances

31. Plaintiff remained in segregation past 4/1/11 due CS3 Scilley's failure to return him to general population at MI-3, a custody supported by CRCC.

32. On 4/1/11 Assc. Superintendent denied plaintiff's appeal with out citing any threat or allegation. This was done by David P. Bailey, the Superintendent's

designee. Bailey failed to address any constitutional issues and failed to find any threat to institutional safety and security or penological rational. His findings are void of due process and appear to be part of a sham disciplinary process of guilt by accusation.

33. On 4/2/11 plaintiff remained in segregation due to CS3 Scilley and another review carbon copied from 4/1/11 without hearing, without due process, and rubber stamped in advance by Assc Super. Melissa Andrewjeski.

34. On 3/14/11 plaintiff filed a grievance for CS3 Scilley's sub standard conduct, on grievance 1109987. The grievance was denied as non-greivable by J L Jdu___ (unknown) as greivance cordinator. This exhausted plaintiff's use of the grievance system,

35. Superintendant Jeff Uttecht and CS4 John Campbell failed to answer plaintiff's appeals in a timely manner or take corrective action. Uttecht and Campbell affirmed the actions of subordinate staff without question. This places both parties as participants in the denial of plaintiff's first and Fourteenth Amendment rights.

36. Superintendent Jeff Uttecht had an obligation to train CS3 Scilley, Lt. Douglas, CUS Robideau, Assc. Andrewjeski, Assc. Bailey, CPM McDonough, and

28

13

mailroom staff in the allowable standards of censorship for out bound mail. These standards are well established by the courts and applicable laws of the state of Washington and the U.S. Constitution.

37. No member of the Washington Department of Corrections can show any request or official filing from the recipients of plaintiffs messages requesting that the Department of Corrections interfer with private correspondance between themselves and plaintiff.

38. While housed in segregation at CRCC, unknown dept of Corrections staff opened, searched and seized mail sent and sealed via the United States Postal Service. Seized mail was out bound correspondance, not inbound. Unknown CRCC staff ran copies of out bound mail, destroyed originals, and transmitted copies of the original letter. Dept of Corrections staff to be identified failed to provide plaintiff of notice the search and seizure at any time. This occurred between February 2011 and April 2011 while plaintiff was housed in the segregation unit of Coyote Ridge Correctional Center.

39. Between February 2011 and April 2011, unknown Dept of Corrections staff searched inbound mail to plaintiff, seized originals of the letters, provided plaintiff with copies of the letters, and failed to provide notice or cause for the search and seizure. Actions by staff to be named violated DOC policy 450.100 and unduly interfered with plaintiff's first amendment rights of free speech. No safety and

security threat are alledged or proven to exist and no prospective declaration of penological interest can be established.

40. The actions and inactions of CRCC personel CPM McDonough, CUS Robideau, CC Parry, CC Scokes, Assc. Andrewjeski, Assc. Bailey, superintendent Uttecht, CS Scilley, and mail room staff to be identified ~~are~~ constitute a collective and coercive conspiracy to deny and/or restrict plaintiffs constitutional rights to free speech.

41. It is likely and probable that inmates will express hostile thought, speech, and writing to private parties regarding the conduct of government officials and employees, especially Dept of Corrections staff. As such Secretary of Corrections Eldon Vail, Secretary of Corrections Bernard Warner, Director of Prison Command BE.Xavier Wright, and Assistant Secretary Dan Pacholke (a.k.a Prisons Director) had an affirmative obligation to train staff on freedom of speech issues and limitations of DOC personnel authority regarding the well established rules of out-bound correspondance. This training was not provided.

42. In order to hold or prove an allegation of threatening, proof must show an actual communicated intent to cause specific harm not allowed by law and must exceed rhetoric, hyperbole, or otherwise course or hostile language. Such communication must be delivered to and intended for the threatened party. No defendant herein named can meet this definition ~~in the~~ the

30

15

allegations made at CRCC between February and April 2011.

43. Dept of Corrections mental health specialist Laura Rugge recognized that plaintiff used written communication to express emotional and mental distress inflicted by other DoC staff. Rugge did not believe plaintiff posed a security threat to himself or others and had reported such to supervisory staff including but not limited to CPM McDonough, Lt. Douglas, Assc. Bailey, and unidentified mailroom staff at Coyote Ridge Correction Center. Plaintiff's expression was implicitly or explicitly approved by mental health staff. DoC personel CUS Robideau, CS Scilley, Lt. Douglas, Assc. Bailey, Assc. Andrewjeski, and mailroom staff to be identified deliberately interfered with plaintiff's medical treatment and punished plaintiff for medical conditions. This constitutes a violation of the Eighth Amendment.

44. DoC mailroom personnel cannot be identified separately from JPay and it's representative who who remains anonymous. JPay is acting and in conjunction with CRCC mailroom personnel to create and write infractions, a job reserved for and usually performed by Dept of Corrections staff. JPay and its employees is an active participant in the actions of CUS Robideau, CS Scilley, Lt. Douglas, CPM McDonough, Assc. Andrewjeski, Assc. Bailey, and CRCC mailroom staff. JPay and its employees are actors with authority of law via contract with Dept of Corrections and participation in the deprivations and interferences named herein.

45. CS Scilley engaged in vindictive and retaliatory conduct outside DoC guidelines in attempting to force an IMU program on a first infraction based on CS Scilley's personal dislike for plaintiff and plaintiff's assertion of rights violated by CS Scilley to his superiors. Such conduct is unconstitutional and not permissable even if allowable under other circumstances.

46. CS Scilley deliberately engaged in conduct contrary to plaintiff's medical conditions and needs for the express purpose of inflicting mental anguish, emotional distress, and/or the destruction of plaintiff's personal relationships with his wife, mother and children.

47. The actions of CPM McDonough, CUS Robideau, Assc. Andrewjeski, unidentified mailroom staff, unidentified segregation staff, CS Scilley, Assc. Bailey, Super. Uttecht, to retain plaintiff for an extended period of time and to transfer him to another facility farther from family support, is sufficient to prevent a reasonable person of firmness from feeling free to communicate with private parties outside the prison system by any means, including but not limited to email, USPS mail, phone and visitation.

48. The actions of CS Scilley retaining plaintiff in segregation impermissibly denied plaintiff visitation by DoC approved visitors including but not limited to wife, children, mother, father, and brother. This violates both plaintiff's and visitors' right of association.

32                                                                17

50. CS Scilley's demand and Assc. Andrewjeski's, super. Bailey's, and other unnamed CRCC.staff's acquiesence to CS Scilley's demand, to move plaintiff from CRCC is not supported by law or policy, but constititutes selective and retaliutory action by the parties on a vindictive animus.

51. On May 10, 2011 CC3 Rebecca Dyson, acting CUS of Airway Heights Correctional Center, Unit K, ordered plaintiff placed in segregation for sending messages outside the prison via the JPay ~~the~~ messaging system. This was done at the behest of CO Barker and Sgt Orth. CC3 Dyson cited "pending investigation and suitability review" without further evidence or finding of threat to others, self, or security. Such action violated plaintiffs constitutionally protected rights to due process created by WAC 137-28 and 137-32. Such action was done without consultation of mental health or any medical providers. Plaintiff was sufficiently minimum custody and properly housed in K-Unit per DOC policy.

52. On May 10, 2011, CO Paul Barker wrote plaintiff a major infraction under code 506. CO Barker cannot cite a specific intent to cause harm or a specific identifyable recipient of said harm. Recipiant of the message V.K. Riegel is not alledged to have been threatened in any way nor is their any record of her asking DOC personnel to censor or intervene in communication with plaintiff. Lo. David Window affirmed the infraction of CO Barker as adequate without further review.

33

18

53. In his infraction report CO Barker cites evidence as being taken, JPay letter IDH#1969534S, but said letter was not provided to plaintiff prior to the infraction hearing. This violated plaintiffs right to defend against the allegation against him. AHCC staff including Lt. Window, CO Rassier, CS Donna Byrnes, CC Fred Fox, and CO Paul Barker had obligation to provide plaintiff with the evidence against him at least 24 hours prior to an infraction hearing.

54. Plaintiff requested a staff adviser for the infraction, appointed was CC Fred Fox, who had an obligation to act as counsel and advise plaintiff of his rights in the disciplinary proceeding. CC Fox failed to advise plaintiff of his right to the evidence or obtain it for review prior to the hearing. CC Fox participated in and contributed to the unfair disciplinary proceedings.

55. On May 16, 2011, CS Donna Byrnes requested an extension of hearing in violation of DOC policy and WAC 137-28 to dispense with plaintiff's right to a speedy hearing under WAC 137-28. CS Byrnes' rational of time to appoint a staff adviser and obtain witness statements misrepresents the fact of their prior completion. Paula Henderson, not Superintendent Maggie Miller-Stout authorized the continuance requested by Byrnes despite explicit law and policy mandating authorization by the superintendant.

34

56. Paula Henderson authorized the continuance requested by Donna Byrnes after the hearing to give retroactive legitimacy to a procedurally deficient hearing.

57. CO Paul Barker, CC Dyson, Lt. Window, and CO Rassier failed to write, review and serve plaintiff his infraction within 24 hours of the alledged conduct and mandated by DOC policy. This deficiency resulted in failure to conduct the hearing within 3 business days as mandated by DOC policy and WAC 137-28.

58. Prior to service of the 506 infraction, an unknown AHCC staff member, believed be CC Dyson added infraction code 663 to the documentation. Infraction code 663 is a lesser included of 506 and violation of double jeopardy principles for a single act of conduct.

59. CS Donna Byrnes found plaintiff guilty of both a 506 and 663 violation on May 18, 2011 relying on Staff testimony and documentation never made available to plaintiff. Further Byrnes never cited a specific threat, coercion, or recipient there of. CS Byrnes incomplete action denied plaintiff appeal process as to the specifics of the finding. Further CS Byrnes conducted the hearing more than 3 business days after plaintiff was segregated in violation of WAC 137-28 and without a valid continuance authorized by the superintendant.

35

60. CS Donna Byrnes forced plaintiff to waive his right to 24 hours notice of a hearing. Failure of notice was the direct result of CS Byrnes' failure to obtain a proper continuance and schedule in compliance with WAC 137-28. CS Byrnes used threat of additional segregation for demanding due process procedures she was violating. CS Byrnes misconduct was observed and facilitated by the presence, without intervention, of CO Russier.

61. CS Byrnes imposed 30 days confinement to quarters, cell confinement, upon plaintiff for the 506/663 infraction in addition to 9 days segregation. Such action reflects the maximum sanction imposable or in excess of DOC policy. CS Byrnes exercised retaliatory discretion for plaintiff's disagreement with CS Byrnes factually and procedurally deficient proceedings.

62. Cell confinement as imposed at AHCC constitutes cruel and unusual punishment under the Eighth amendment. For 30 days plaintiff was denied all yard, gym, or other physical recreation, all access to state and law library, restricted access to staff, including counselors, forced PREA (Prison Rape Elimination Act) issues regarding defecation in the presence of another, and reduced laundry service. Under Washington law, segregation is a higher security housing than medium custody on cell confinement, but under WAC 137-32 segregation inmates are specifically reserved the rights of recreation, library, and legal access. AHCC via CS Byrnes is using cell confinement to impose greater

21

and longer punishments than allowed via segregation and with reduced legal protections.

63. CS Byrnes implementation of 30 days cell confinement violates the approved usage of minimum and medium house not designed for 23 hour continuous forced occupancy. Plaintiffs cell confinement violated N-Unit building code at AHCC.

64. On June 8, 2011 CC3 Curtis MacDonald reduced plaintiffs custody from ~~medium~~ MI-3 (minimum) to medium as a direct result of plaintiff's exercise of his protected constitutional rights via freedom of speech.

65. On June 17, 2011 Associate Robert Herzog on behalf of superintendent Maggie Miller-Stout denied appeal Herzog relies on an erroneous reading of DOC policy 450.100 and alledges criminal activity as the justification of the inspection. No criminal activity is alledged any- where else and is a fabrication of Herzog. Further Herzog relies on JPay's terms of use, an item not in evidence, not available in the law library and not a part of DoC policy to affirm the misconduct of CS Byrnes, CO Barker, CC Dyson, LC. Douglas. Herzog relied upon information not part of the infraction to create guilt without determination of constitutional rights.

66. AHCC office of superintendent Miller-Stout failed to log plaintiff's appeal until June 10, 2011 despite its filing on May 30, 2011.

37

This is part of AHCC policy to delay, deny and otherwise render the appeal process meaningless and compel service of sanctions prior to correction. AHCC enforces all sanctions prior to appeal and grants no remedy for error.

67. Plaintiff filed grievances 1111627, 1111982, and 1111631 in relation to staff conduct at AHCC on this matter. All grievances were denied by Grievance Coordinator C. Fitzpatrick as non-grievable. This included administrative withdrawal of a level III grievance prior to review by DOC Headquarters. AHCC's grievance proceedures are broken and plaintiff has exhausted remedy available via the grievance process.

68. On May 29, 2011 CO Garvin served plaintiff the sanction of 30 days cell confinement. The confinement specifically forbids law library access without a prior court deadline; interpretted as a court ordered filing at AHCC, specifically limits access to religious activities, provides no allowance for any recreational activity for the duration of the sanction, and provides for no access to any library or other mentally stimulating materials. Said sanction violates plaintiffs right of access to raise issues before the court, violates plaintiffs eighth amendment rights to be free of cruel and unusual punishment by both physical and mental deprivations, and unreasonably curtails plaintiffs participation in religious activities. This action was taken under guise of DOC policy 460.000

38                                                                          23

WAC 137-28, and implemented by use of DoC form 17-085.

69. On June 9, 2011, N-Unit Staff, believed to be Sgt Jack Richardson and CO Hall infracted plaintiff for sleeping in his cell while serving the 30 day cell confinement imposed on May 29, 2011. Plaintiff is documented as having no other activities or obligations and being required to be in the cell. Said infraction is a violation of Eighth amendment protections by creating an impossible situation wherein compliance with one rule causes non-compliance with another rule.

70. Plaintiff appealed the June 9, 2011 infraction in which Sgt. Justin Grimes found him guilty on a June 23, 2011 hearing. The hearing was invalid on its face as WAC 137-28 mandates a hearing within 5 working days of the incident date. Hearings of minor infractions are heard by Sergeants at AHCC who are on-site 24/7 and who frequently hold hearings on weekends and holidays. For the purpose of minor infractions, working days are calendar days. An extension was granted on June 21, 2011; 12 days after the incident to allow retroactive reinstatement of a proceedurally deficient infraction.

71. Lt Frank Rivera upheld plaintiff's guilty finding on the June 9, 2011 infraction citing compliance with WAC 137-28, which was clearly violated.

Further Rivera cited, "You did not file your appeal within 24 hours of notice. The hearing was 6/23/11 @ 1941, your appeal was filed 6/24/11 @ 2000." Rivera is denying appeal rights based upon the imposition of sanctions from 5/29/2011. Per plaintiffs sanction notice, he could only be out of his cell from 2000 to 2100 of 6/24/2011. To comply with Riveras Ruling of late filing, plaintiff would have been required to violate sanctions and incur another infraction to exercise right of appeal on the instant infraction. Lt Rivera, Sgt Grimes, CO Hull, Sgt Jack Richardson, and unnamed staff worked in collusion to deny plaintiff procedural process by implementation of disciplinary actions.

72. On January 25, 2011 CO Paul Barker in conjunction with Sgt Thomas Orth issued plaintiff a 506 infraction for threatening Samantha Reed and Matthew Reed. Barker apparently believes plaintiff may violate the standard of threatening another by threatening himself. Sgt Orth and CO Barker cannot state any specific comminicated intent to cause harm to another party. Again CO Barker and Sgt Orth base their allegations on an email sent by plaintiff to a party outside the facility. CO Barkers Infraction was approved and initially reviewed by Lt. Paul Derenich as complete and sufficient to proceed forward. CO Barker, Sgt Orth and Lt. Duenich individually and collectively conspired to deny and restrict plaintiffs ability and right to communicate with individuals outside the prison and the right

of individuals outside the facility to communicate
with plaintiff via the sending and receiving of
electronic mail. This violates both sender and
recipients first ammendment rights of free
speech.

73. Per the infraction report and infraction review
checklist, Doc form 17-076 and 17-069 signed
by Lt. Paul Druenich on 1-25-12 evidence
was taken and collected. No description of the
evidence is recorded an no evidence was presented
to plaintiff prior to hearing. Further Doc 17-069
records a review for a 606 infraction which
has to do with introduction and/or possession of
tobacco at a Doc facility. Plaintiff's right to
know the allegations and evidence against him
were impermissibly denied by the deliberate
or ignorant errors of Lt. Druenich, Sgt Orth,
and SO Barker.

74. On Jan 31, 2012, plaintiff was served with
notice of a disciplinary hearing by CO Garvin
at 2130 regarding the 506 violation. Per the
notice the hearing was scheduled for Feb 3,
2012 at 1000. The hearing was not conducted
until Feb 22, 2012 by CS Donna Byrnes
in the presence of CO Rassier. Plaintiff was
not provided notice of the hearing at least
24 hours in advance nor was any continuance
given in this matter. CS Byrnes violated WAC
137-28 by not demanding a continuance for hearings

41

26

not held within 7 days of the incident and
plaintiffs constitutional right to at leat 24
hours notice.

75. On Feb 22, 2012 CS Byrnes dismissed
plaintiff from the hearing citing behavioral issues
for plaintiffs raising of proceedurally deficient
issues of service including a defective DoC
17-069 form. CS Byrnes denied plaintiff an
opportunity to raise a defense, declared a bias
in favor of DoC personal, waived any claim as
a neutral arbitrater or hearings officer, violated
numerous portions of WAC 137-28 regarding
conduct of a disciplinary hearing and totally
dispensed any pretense of honoring plaintiffs
Fourteenth amendment rights to due process.

76. On Feb 22, 2012, CS Donna Byrnes engaged
in vindictive and retaliatory behavior using her
position as CS3, a hearings officer, to find plaintiff
guilty of the the 506 written be CO Barker on
1/25/2012. CS Byrnes relied on testimony and
documentation not provided to plaintiff and without
citation of the threat or threatened party. CS
Byrnes further imposed 30 days cell confinement
and life time loss ability to use the emessaging system,
jPay. These sanctions exceeded DoC policy, WAC
137-28, and all verdicts and findings were
done in plaintiffs absence without opportunity
for defense. CS Byrnes took these actions as a
direct retaliation for plaintiffs exercise of his

right to challenge process, procedure, and the competence of staff including Lt. Duenich, CO Barker, Sgt Orth, and other unknown personnel. CS Byrnes violated plaintiffs constitutional protections under the First, Eighth, and Fourteenth Amendments of the United States Constitution.

77. On or about March 16, 2012, plaintiff appealed the actions and finding CS Byrnes. In the appeal plaintiff raised numerous issues including constitutional violations under the First Amendment, WAC 137-28, procedural errors related to the filing and processing, and other defects in DOC policy. Associate James Key dismissed the finding of 2/22/12, but ordered a new hearing. Key failed to address other issues and by check box appears to have affirmed and condoned all other staff conduct and errors, particularly CS Byrnes misconduct. Further by ordering a new hearing after process, Key raises issues of speedy hearing violations and double jeopardy to give DOC unlimited attempts at a self designated fair hearing to the detriment and prejudice against plaintiff.

78. On March 30, 2012, Paula Henderson signing as superintendant authorized a continuance in the matter from 1/25/12 on request of T___ P___ J (unknown), hearings officer. WAC rules do not allow for a new hearing or a first continuance over 60 days after the incident. Paula Henderson contributed to the ongoing harassment and constitution deprivations of plaintiff in allowing continued process on this matter.

43                                                          28

79. At some point in time, unknown, DoC 17-069 was modified after service on plaintiff to reflect a violation of WAC code 506 not 606. The modification was done by initial "DB" presumed to be Donna Byrnes. The modification was done by hand, without proper review, and after service. Byrnes or an AHCC Employee to be identified altered documents in a disciplinary proceeding without process.

80. On April 3, 2012 at 1755 C.O R. Stuart served plaintiff a disciplinary hearing notice on the January 25, 2012 incident indicating that a hearing was to be held on March 30, 2012, 4 days prior to service. Again evidence is collected and supposedly filed but not provided to plaintiff.

81. On May 15, 2012, nearly four months after the incident Michael Guzman dismissed the proceeding citing "the witness statement was not included in the packet. The evidence was not present..." Presumably the evidence was not present on Feb 22, 2012 either when CS Byrnes engaged in retaliatory and vindictive findings against plaintiff.

82. On May 15, 2012 Michael Guzman declared on record, that email is not mail, that DoC may treat it differently and that the U.S. Constitution is subject the JPay terms of use and conditions established by JPay and

the Dept of Corrections. No right of free speech exists. In making record of such policy, Michael Guzman diminished constitutional rights of the plaintiff and made denial of free speech to outside parties established state policy.

83. On March 6, 2012, plaintiff had notary Rachael Shook notarize an official misconduct complaint against CS Donna Byrnes under RCW 72.10.060 and RCW 9A.80.010. On March 28, 2012 Earl X. Wright, Deputy Director Prisons Command B, denied plaintiff's allegations of misconduct against CS Byrnes. Affirmed CS Byrnes right to use proceedural denial to hold hearings in absentia, and shift blame for staff actions to plaintiff. Earl Wright granted in writing a blanket authorization for CS Donna Byrnes to void all constitutional protections and processes of plaintiff on whim of accusation and without substantive investigation of DoC. Bernard Warner, Secretary, Dan Pacholke, Prisons Director, and Maggie Miller-Stout received copies of Wright's grant and blessing of constitutional due process violations. No one recinded, corrected, modified, or limited Wrights affirmative participation in due process violations. All parties are active conspirators via non-intervention in Fourteenth, First, and Eighth Amendment violations of plaintiff. Actors Wright, Pacholke, Warner, Miller-Stout all failed to train staff and themselves in well established constitutional law.

~~US District of Western~~

84. Plaintiff filed grievances 120 8903, and 1204320 over the conduct and proceedings of staff at AHCC, specifically CS Byrnes and CC MacDonald in regards to the January 25, 2011 incident.

85. Superintendant Maggie Miller-Stout had an obligation to provide training regarding freedoms of speech to all staff at AHCC including but not limited to CO Barker, Sgt Orth, Sgt Richardson, Sgt Grimes, CS Byrnes, CC3 Dyson, CO Garvin, CUS Michael Guzman, CO Russier, and others. This training was inadequate in provision.

86. JPay representative(s) have restricted and censored email via the JPay system against plaintiff. Dept. of Corrections personal are indistinguishable from anonymous JPay employees acting under the authority of DoC Policy 450.100 and related RCWs, specifically RCW 72.02.260 which is unconstitutional on its face and allows for censorship of mail without boundry or limitation. Further violated are conditions of WAC 137-48 regarding mail and the protections afforded in makes consistent with the U.S. Constitution. JPay and DoC staff named herein are joint actors under authority of law.

87. JPay and its employees to be named censor and restrict email while acting as agents of the Dept. of Correction. JPay employees have authority to act

46

31

under law with power normally reserved for state of Washington Dept. of Corrections personnel.

88. The Washington State Department of Corrections under the direction of Elden Vail, Secretary, Earl X. Wright, Prisons Director, Bernard Warner, Secretary, and an Information Systems Manager to be named failed to provide or see that provision was made for JPay employees to receive training on First Amendment rights of Prisons. Such training was either non-existent or inadequate, and should have been provided by the contracting entity, DoC.

89. JPay and the DoC staff specifically named herein, including but not limited to CO Barker, Sgt Orth, CS Byrnes, L.C. Ouenich, Lt Winslow, CS Scilley, are working together to limit, reduce, and restrict communication that is critical of DoC as a whole or individually and is politically motivated and critical of the Washington State government and elected officials. The structure is to deny First Amendment rights.

90. The actions of CO Barker, Lt Winslow, Lt Ouenich, CC Dyson, CO Rossier, Assc. Herzog, Assc. Key, Prisons Director Wright, Sgt Orth, Sgt Richardson, Super- intendent Miller-Stout are sufficient to cause a person of reasonable fortitude to relinquish constitutional

47

rights of free speech. Such relinquishment is compelled by individuals acting under authority of law and employed by the Washington Dept. of Corrections.

91. The actions of CO Barker, Sgt Orth, CS Byrnes and others caused plaintiff to reside from May 10, 2011 until August 1, 2012 in medium custody at an increased and unesscessary risk to plaintiffs personal safety.

92. The actions of CS Scilley, CPM MacDonough, CS Byrnes, CRCC Mailroom staff, CO Barker, Sgt Orth, and others caused plaintiff to unduly loose the opportunity for MI-2 custody and class I employment while incarcerated.

93. The actions of CO Barker, Sgt Orth, CS Byrnes, CS Scilley dramatically and adversely affected plaintiff's ability to communicate with his wife, children, parents, and friends.

94. Plaintiff suffers from a substantial loss of society and connection with twin sons, age 3, as result of actions to silence plaintiff's free speech rights.

95. Defendant's action to impair and limit plaintiff's free speech rights has greatly contributed to the

48

deterioration of plaintiff's marriage and the nearly inevitable divorce now pending.

96. The actions of CO Barker, CS Donna Brynes, Sgt. Jack Richardson, Sgt Orth, and others have caused plaintiff to reside in long term minimum custody (MI-3) since August 1, 2012 until present, or until at least Dec 29, 2012.

97. The actions of CO Barker, CS Byrnes, CS Scilley, Sgt Orth, and others are being used to deny plaintiff Work Release and the ability to earn over $25,000 to reintegrate into the community.

98. The actions of defendants herein named individually and collectively have contributed substantial mental anguish and emotional suffering by the plaintiff.

99. The actions of defendants named herein have been used to deny plaintiff training under the Home Builders program run by the Spokane Home Builders Association. Plaintiff was approved to take the program several times, but denied due to actions of CUS William Stockwell, Sgt Jack Richardson, CS Donna Byrnes, CC Devin Hughes, Sgt. Macy, and other AHCC staff.